UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEON DAVIS,<br><br>Plaintiff,<br><br>v.<br><br>DAVIS GOMEZ, ET AL.,<br><br>Defendants. | Case No. 20-CV-4683<br><br>Judge Mary M. Rowland |

### MEMORANDUM OPINION AND ORDER

Plaintiff Deon Davis sues correctional officials at Stateville Correctional Center, alleging that they subjected him to unconstitutional conditions of confinement in 2018. Defendants Nicholas Lamb, Sherwin Miles, William Brown, and Terrell Pork move now for summary judgment. [66]. For the reasons explained below, this Court denies Defendants' motion.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made,

1

the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id*.

## BACKGROUND

The Court takes the following background facts from Defendants' statement of facts (DSOF) [68], Plaintiff's response to Defendant's statement of facts (PRSOF) and statement of additional facts (PSAF) [76], and Defendant's response to Plaintiff's statement of additional facts (DRSAF) [83].

Plaintiff Deon Davis was incarcerated within the Illinois Department of Corrections (IDOC) during the relevant time—September 13, 2018 to November 11, 2018. DSOF ¶ 1. During the relevant time, Defendants Nicholas Lamb and Sherwin

Miles served as assistant wardens at Stateville Correctional Center, Defendant Terrell Pork served as a correctional sergeant in X-House at Stateville, and Defendant William Brown served as a correctional lieutenant at Stateville. *Id.* ¶¶ 2–6.

On September 13, 2018, Plaintiff was out on the X-house segregation yard. *Id.* ¶ 8. At approximately 11:30 a.m., Plaintiff asked an unidentified tower guard to provide him an escort to the restroom. *Id.* ¶ 9. After the escort did not arrive for Plaintiff, he defecated in the segregation yard. *Id.* ¶ 10. According to Plaintiff's declaration, he was placed in the segregation yard for a period of five continuous hours and could not wait the several hours until the guards released him from the yard. [76-1] ¶¶ 19–22. Plaintiff says he told Defendant Pork what had happened after the five-hour recreation period ended. *Id.* ¶ 23. Plaintiff told Pork that he knew that other Illinois prisons, like Menard Correctional Center, had toilets available on their segregation yards and advised that Stateville needed one. *Id.* According to Plaintiff, Pork told him that Stateville administration was working on installing a toilet in the segregation yard and that Plaintiff could avoid the lack of toilet access by staying out of segregation. *Id.* ¶ 24. Brown was present for the entire conversation. *Id.* ¶ 26.

Again, on October 14, 2018, Plaintiff was out on the X-house segregation yard. DSOF ¶ 11. About an hour into his yard time, Plaintiff asked an unidentified guard to provide an escort to the restroom. *Id.* ¶ 13. According to Plaintiff, the guard ignored his request, so Plaintiff asked again fifteen to twenty minutes later. PRSOF ¶ 13. The guard then informed Plaintiff that he informed the X-house segregation unit that

3

Plaintiff needed an escort to his cell. DSOF ¶ 13. Plaintiff could not wait and defecated on himself in the segregation yard. *Id.* ¶ 14. Plaintiff remained in his defecated clothing for another three hours. *Id.* ¶ 15. Plaintiff attests in his declaration that he told Brown about this incident immediately upon being returned to his cell. [76-1] ¶ 33. Brown told Plaintiff that members of Stateville administration were working on installing a toilet in the segregation yard. *Id.* ¶ 34.

On November 11, 2018, Plaintiff was out on the X-house segregation yard. DSOF ¶ 16. While there, Plaintiff requested an unidentified guard to provide him an escort to the restroom. *Id.* ¶ 17. Plaintiff did not receive an escort but did not urinate or defecate on himself or the yard on November 11. *Id.* ¶¶ 18–19. According to Plaintiff, during this incident, he felt the urgent need to urinate, which was exacerbated by his prescription use of hydrochlorothiazide, a diuretic that manages his high blood pressure. [76-1] ¶ 37.

Plaintiff communicated with a prison counselor five times through mail or grievances between September 13 and November 13, 2018. DSOF ¶ 21. He did not mention having defecated on himself in X-house yard to his counselor prior to filing his grievance on November 23, 2018. *Id.* ¶ 22. In that grievance, Plaintiff writes, among other things, that on September 13 and October 14, he "had to defecate" but that both times "no one came" so he "had to defecate on the yard." [68-2] at 2. Plaintiff did not name the tower guards or any of the named Defendants in this grievance. DSOF ¶ 27; [68-2].

4

Stateville has a policy that tower officers must call someone to escort a person in custody to use the bathroom during yard time. DSOF ¶ 28. During the relevant time, Stateville did not have portable restrooms on the segregation yards. *Id.* ¶ 29.

Plaintiff asserts that, as a result of these incidents of being refused bathroom access while out on the segregation yard, he has experienced stomach pain and complications, including the inability to defecate normally. [76-1] ¶ 43. He also continues to experience a burning sensation in his kidneys, for which he receives medical treatment. *Id.*

In December 2018, Plaintiff saw Lamb accompany representatives of the John Howard Association on a tour of X House. [76-1] ¶ 12. During that tour, Plaintiff asked Lamb about the lack of toilets on the segregation yard, and Lamb responded that the problem was out of his hands. *Id.*

Each Defendant maintains he has no recollection of any of the three occasions that Plaintiff claims he was refused a bathroom escort. PSAF ¶ 7.

Plaintiff attests that he remains incarcerated at Stateville, where there is "still no toilet available for prisoner use in the X-House segregation yard," and toilet access has not been otherwise improved nor made more accessible to inmates. [76-1] ¶ 46. To show that this lack of bathroom access is a systemic problem, Plaintiff also submits the declarations of other inmates. Stateville inmate Dimitrius Thomas avers that he submitted a grievance in August 2018 explaining that, on August 5 of that year, he was denied an escort to the bathroom while out on the segregation yard, and as a result, defecated on himself. [76-3] ¶ 4. Another inmate, Maurice Brown, submitted

a declaration stating that he filed grievances in 2012, 2018, and 2019 complaining about the lack of portable toilet in the segregation yard. [76-4] at 2. The May 2012 grievance Brown submitted complained that while he was on the segregation yard for over five hours, he had to urinate, but his requests to be escorted to the bathroom went unanswered. *Id.* at 3. Brown states that none of his grievances were answered. *Id.* at 2.

Plaintiff brings his amended complaint under 42 U.S.C. § 1983 alleging that his conditions of confinement constitute cruel and unusual punishment in contravention of the Eighth Amendment. [22]. Defendants deny liability and move for summary judgment. [66].

## ANALYSIS

Defendants move for summary judgment, arguing that: (1) Plaintiff has not raised a genuine issue of material fact on his Eighth Amendment claim; and (2) the qualified immunity doctrine protects Defendants from liability. [67]; [82]. For the reasons explained below, neither argument has merit.

I.   **Eighth Amendment Standard**

The Eighth Amendment imposes liability on prison officials who act with deliberate indifference to a substantial risk of serious harm to inmates. *Eagan v. Dempsey*, 987 F.3d 667, 693 (7th Cir. 2021). The deliberate indifference standard encompasses both objective and subjective elements, "each of which must be satisfied." *Johnson v. Prentice*, 29 F.4th 895, 904 (7th Cir. 2022) (quoting *Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 565 (7th Cir. 2021)). The objective element

requires Plaintiff to establish that he faced "sufficiently serious" conditions, meaning that Defendants denied him "the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety." *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019) (internal quotation marks and citation omitted). To meet the subjective element, Plaintiff must demonstrate that Defendants exhibited "more than mere or gross negligence, but less than purposeful infliction of harm." *Quinn*, 8 F.4th at 566 (quoting *Lisle v. Welborn*, 933 F.3d 705, 717 (7th Cir. 2019)).

## II.   Plaintiff Raises a Triable Issue on the Objective Element

Initially, the parties dispute whether Plaintiff's lack of bathroom access is objectively serious can rise to the level of an Eighth Amendment violation. Generally, "[t]emporary lack of toilet access is not cruel and unusual punishment." *Harris v. Jones*, No. 20-1625, 2021 WL 4950248, at *2 (7th Cir. Oct. 25, 2021); *see Thomas v. McCoy*, No. 17 C 6386, 2020 WL 247464, at *6 (N.D. Ill. Jan. 16, 2020) ("The court acknowledges that the lack of access to toilet facilities for a short period of time may not be sufficiently serious to state a claim of constitutional dimension, particularly if access is denied due to valid penological concerns."); *accord Perry v. JPAY, Inc.*, No. 7:16-CV-00362, 2018 WL 1309743, at *8 (W.D. Va. Mar. 13, 2018) ("Temporary restrictions on bathroom use, even ones lasting hours, do not constitute the wanton infliction of pain or exhibit deliberate indifference to a prisoner's health or safety.")

(quoting *Watson v. Graves*, No. 1:15cv1214, 2017 WL 4533103, at *5 (E.D. Va. Oct. 6, 2017)).

Notwithstanding, "'deprivation of use of a bathroom that creates a risk of particular discomfort and humiliation' may rise to the level of cruel and unusual punishment." *Thomas v. McCoy*, No. 17 C 6386, 2020 WL 247464, at *6 (N.D. Ill. Jan. 16, 2020) (quoting *Fulford-El v. Wolfe*, No. CIV WDQ-10-0151, 2010 WL 4721711, at *3 (D. Md. Nov. 15, 2010)); *see also Young v. Fischer*, No. 20-CV-1084-BBC, 2021 WL 510730, at *2 (W.D. Wis. Feb. 11, 2021) (noting that "there may be some situations in which denying an inmate access to a bathroom could be a constitutional violation, such as denying bathroom access to an inmate who cannot control his bladder due to disability, or where denying access to a bathroom could pose a risk of serious harm to the inmate") (internal citations omitted).

Here, Plaintiff claims that he experienced humiliation from having to defecate on himself. He also avers that he has experienced lasting medical issues from those incidents of having to hold his urine and feces; and that, since those incidents, he has experienced stomach pain and complications, including the inability to defecate normally. [76-1] ¶ 43. He also still seeks treatment for experiencing a burning sensation in his kidneys after these incidents occurred. *Id.*

Plaintiff's evidence that he experienced humiliation and lasting health issues create a triable issue of fact on the objective element of his deliberate indifference claim. *Thomas*, 2020 WL 247464, at *6. A reasonable jury could find that Plaintiff's

conditions of confinement were objectively serious enough to constitute cruel and unusual punishment under the Eighth Amendment.

### III. Plaintiff Raises a Triable Issue on the Subjective Element

To create a genuine issue of material fact on the subjective element for a deliberate indifference claim, Plaintiff must adduce evidence that Defendants were "both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and he must also have drawn the inference." *Passmore v. Josephson*, 376 F. Supp. 3d 874, 883 (N.D. Ill. 2019) (quoting *Gray v. Hardy*, 826 F.3d 1000, 1008 (7th Cir. 2016)); *see also Johnson*, 29 F.4th at 904. This standard "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020).

The record shows that Plaintiff told Pork, Brown, and Lamb about the incidents in the yard where he was forced to defecate on himself. Plaintiff also urged those Defendants to look into installing a bathroom on the premises of the segregation yard. As Defendants point out, there is no evidence that any of those Defendants personally was responsible for not providing Plaintiff access to the bathroom when he made those requests. *See Gonzalez v. McHenry County*, 40 F.4th 824, 827 (7th Cir. 2022) (noting that Section 1983 requires personal involvement in a constitutional

deprivation before liability attaches). Those failures fall on the unnamed tower guards who are not named in this lawsuit.

Plaintiff does, however, point to evidence from which a reasonable juror could find that Pork, Brown, and Lamb possessed a sufficiently culpable state of mind in their responses to Plaintiff's complaints about the lack of bathroom access in the segregation yard. Plaintiff's requests for bathroom access appears to have "fallen on deaf ears" because there is no evidence that any of those Defendants did anything once Plaintiff personally complained to them, such as inquiring about providing more escorts for inmates to their cells for toilet use, or asking more senior administrators if they could act more expediently in building a bathroom in the segregation yard. *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997); *see Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (noting that "prisoner requests for relief that fall on deaf ears may evidence deliberate indifference") (quotation omitted).

Rather, after Plaintiff complained directly to them that he had been forced to defecate on himself and remain in his soiled clothes in the segregation yard, Pork and Brown told Plaintiff that Stateville was working on installing a bathroom in the segregation yard, and Lamb told Plaintiff that the problem was "out of his hands." Pork and Brown submit no evidence corroborating their representation to Plaintiff that Stateville was actually working on installing a bathroom. In fact, Plaintiff states in his declaration that there is still no bathroom in the X-house segregation yard. [76-

1] ¶ 46. Viewing the record in Plaintiff's favor, a reasonable jury could find that Pork and Brown ignored or misled Plaintiff in their responses to his complaints.

And in Lamb's case, although he told Plaintiff the matter was "out of his hands," like the other Defendants, he submits no evidence that establishes that he, in fact, was powerless to improve the conditions. *See Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997) ("Because the record as developed does not demonstrate that defendants were powerless to correct the conditions that Dixon alleged to exist, there are triable issues concerning both defendants' actual knowledge of the conditions, and their ability to correct them.") (internal citations omitted); *Boclair v. Godinez*, No. 13 C 08630, 2017 WL 1427069, at *8 (N.D. Ill. Apr. 21, 2017) ("Boclair's allegation that Nushardt said he 'ha[d] no choice' when he placed him back in the cell is also not an admission that Nushardt was *in fact* powerless to alleviate the issue, only that Nushardt *said* he was."). A jury could reasonably find Lamb's non-actions indicative of a sufficiently culpable state of mind. *Giles*, 914 F.3d at 1049.

The record also precludes summary judgment to Defendant Miles. There is no evidence that Plaintiff ever complained to Miles, nor that Miles knew that Plaintiff had experienced harm from the three incidents in the yard. Yet as Plaintiff argues, Miles was an assistant warden of operations, and thus a jury could find that he must have known about the conditions in the segregation yard. Knowledge of unsanitary "systemic conditions" that "exist throughout Stateville" "can be fairly imputed to high-level Stateville officers." *Smith v. Godinez*, No. 14 C 6744, 2023 WL 358792, at *10 (N.D. Ill. Jan. 23, 2023); *see Gray v. Hardy*, 826 F.3d 1000, 1008 (7th Cir. 2016)

("Evidence that the warden 'must have known' about the risk of physical or psychological harm resulting from the unsanitary conditions is sufficient for a jury to find deliberate indifference.") (quoting *Sanville v. McCaughtry*, 266 F.3d 724, 737 (7th Cir. 2001)). Plaintiff presents sufficient evidence—including through the declarations of other inmates who have complained about lack of bathroom facilities since 2012—that the problem has been so systemic that Miles must have known about the serious risk to inmates. In contrast, Miles puts forth no evidence that he has attempted to ameliorate the lack of access to bathroom facilities in the segregation yard. Rather, as discussed, it appears that a usable bathroom remains lacking in the segregation yard. This Court therefore denies summary judgment to Miles.

## IV. Qualified Immunity is Unavailable to Defendants

Defendants argue that the doctrine of qualified immunity entitles them to judgment. [67] at 10–11. This argument fares no better. The Court declines to find Defendants protected by qualified immunity at this stage.

Rooted in the idea of fair notice, *McGee v. Parsano*, 55 F.4th 563, 570 (7th Cir. 2022), the doctrine of qualified immunity "balances dueling interests—allowing officials to perform their duties reasonably without fear of liability on the one hand and 'affording members of the public the ability to vindicate constitutional violations by government officials who abuse their offices' on the other," *Lopez v. Sheriff of Cook Cty.*, 993 F.3d 981, 987 (7th Cir. 2021) (quoting *Weinmann v. McClone*, 787 F.3d 444, 447–48 (7th Cir. 2015)). Qualified immunity attaches unless: (1) a government official violated a federal statutory or constitutional right; and (2) the unlawfulness of this

12

conduct "was clearly established at the time." *McGee*, 55 F.4th at 570 (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)).

Focusing on the second step of the qualified immunity inquiry, the law was clearly established during the relevant time that officials act with deliberate indifference when they react with a lack of concern to an inmate's complaints about his complete lack of basic life necessities, including adequate sanitation. *See Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) ("Jail officials violate the Eighth Amendment if they are deliberately indifferent to adverse conditions that deny the minimal civilized measure of life's necessities, including adequate sanitation and personal hygiene items") (quotation omitted); *Gill v. Litscher*, 468 F.3d 488, 495 (7th Cir. 2006) (denying qualified immunity to prison officials because they "cannot show that in 2002, when these events occurred, it was not well-established that denial of shelter, heat, and hygiene items implicated an inmate's constitutional rights"). And while Defendants attempt to distinguish cases cited by Plaintiff as more extreme than the conditions of which Plaintiff complains, *see* [82] at 4–5, "a case need not be directly on point for a right to be clearly established," *Steele v. Knight*, No. 113CV00982JMSDKL, 2016 WL 7117155, at *11 (S.D. Ind. Dec. 7, 2016) (citing *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 528 (7th Cir. 2012)). This Court therefore denies summary judgment on qualified immunity grounds.

## CONCLUSION

For the reasons explained above, this Court denies Defendants' motion for summary judgment [66]. This Court sets a telephonic status hearing for April 11,

2023, at 9:30 AM. Parties should call 866-434-5269; access code is 3751971. The parties are directed to meet and confer in advance of the status hearing and should be prepared to inform this Court whether they believe a settlement conference would be productive.

E N T E R:

Dated: March 20, 2023

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

14